The next case this morning is number 5180017, People v. Keppler. Arguing for the appellant, Brandon Keppler, is Jennifer Lassie. Arguing for the appellee, People of the State of Illinois, is Michael Lennox. Each side will have up to 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings. Good morning to both of you. Good morning, Judge. Good morning. Ms. Lassie, if you're ready to proceed, we'll hear your argument. Yes, Your Honor. May it please the court, I'm Jennifer Lassie on behalf of the defendant appellant, Mr. Brandon Keppler. Errors by trial counsel and the circuit court deprived Mr. Keppler of his constitutional right to a fair trial. To be clear, Mr. Keppler is not challenging the admission of R.K.'s sexual allegations, which were admitted under Section 7.3. However, his trial attorney was ineffective for allowing jurors to be flooded with irrelevant and highly prejudicial physical abuse allegations from R.K., who was not the complainant in this case, and where these allegations would have otherwise been inadmissible, other crimes and other bad acts evidence. Because of counsel's failures in this case, the jury was told that Mr. Keppler had broken R.K.'s ribs, blacked her eye, punched her in the face, hit R.K. in the lip multiple times, bruising her lip, that he kicked R.K., pulled her hair, dragged her by her shirt and ripped it, that R.K. looked at Mr. Keppler wrong, causing him to strike her into a stove and cause her to have a seizure, that jurors learned that R.K. ran away to escape from Mr. Keppler, that Mr. Keppler was controlling with R.K., and that she couldn't do or say anything unless it was his way. Jurors were told that R.K.'s friends had, that she had told them about the physical abuse, and some of R.K.'s friends testified that they had seen R.K. with a black eye and bandaged ribs when she talked to them about the abuse for Mr. Keppler. And counsel also didn't object when the state argued that it must have been horrible for R.K. to live with her abuser and a mother that didn't protect her. Now, in that list of items which the jury was flooded with, the only one the jury was told that it could not consider was that R.K. had a seizure when Mr. Keppler knocked her into a stove. No reasonable attorney faced with the facts of this case would have allowed this evidence to come in, where it was highly prejudicial and otherwise inadmissible other crimes and other bad acts evidence from someone who was not the complainant in this case. Let me stop you for one second. All those things that you said that R.K. complained of and brought to someone's attention, what was the timing, just so that I'm clear, from the time that those things occurred to the time she brought those forward? And how does that relate to when her and her mother moved out of the home with her stepdad? So I believe that she and her mother moved out in 2016. The stove incident was 2015, she claimed. I believe some of those incidents may have been in 2016. However, there was no pre-trial hearing about these physical abuse allegations. There was a hearing about the sexual abuse allegations, so we've got details on those, but there was no hearing on the physical. So what I'm asking is, she never brought any formal complaints, she never reported to school counselors or DCFS or any of those agencies about any of that behavior, those alleged incidents, prior to her moving out of the home with him. Is that correct? So it seems that, yes, she did not report them until he moved out. However, she did apparently report the physical abuse allegations to friends. So friends did get on the stand and testify that she had told them about the physical abuse allegations. Did they testify as to when she told them in relation to when they took place? They did not. All right, thank you. Go ahead. Yes, Your Honor. No reasonable attorney faced with the facts of this case would have allowed the physical abuse allegations to come in. Not only that, but counsel had a pre-trial ruling barring evidence of Mr. Kepler's sex offender conviction and that he was a registered sex offender, and counsel's questioning brought that evidence in before the jury. And this was a trial within a trial, something that even the circuit court judge admitted. And this wasn't just likely to confuse jurors. The record shows affirmatively that it did confuse jurors. After the defense rested, one juror informed the bailiff that the testimony was confusing and wanted to know if they would have access to transcripts. So this was a textbook case of a trial within a trial on R.K.'s allegations. And again, R.K. was not the complainant in this case. Not only that, but the trial court's errors made this even worse. After a juror expressed that the testimony was confusing, the trial court allowed impeachment on a collateral issue, where it allowed Detective Whetstone to testify as a rebuttal witness about R.K.'s credibility based on other sexual allegations she had made against other people uninvolved in this case. This truly was the trial within a trial that the case law prohibits. And here, these errors mattered. The evidence here was not overwhelming. And that's something that the state does not dispute in the briefs. Not once does the state deny that the evidence here was not overwhelming with respect to M.C.'s sexual abuse allegation. M.C. was the only eyewitness to the alleged sexual abuse, and she initially denied that there was any underage drinking. And she told DCFS and Officer McWard that Mr. Kepler did not touch her, did not make her feel uncomfortable, did not give her alcohol, and that she felt safe at his home. When M.C. did admit to underage drinking, she initially claimed that the girls were trying to drink without Mr. and Mrs. Kepler finding out. All four girls testified that Winnie Kepler bought alcohol for them, and Winnie Kepler, Mr. Kepler's wife, was the only one that appeared in the pictures presented at trial. At trial, M.C. said she weighed about 130 pounds, had at least eight shots, and was intoxicated but knew what was going on. However, she also said she could not remember what happened after she cried in the barn. The other girls testified that M.C. vomited all over herself and was unable to care for herself, needing help getting in the bath. So the only eyewitness was incredibly intoxicated and gave multiple versions of what happened, with her first versions completely exonerating Mr. Kepler of any wrongdoing. R.K. testified that her parents letting her drink on February 5th was a once-in-a-lifetime event and that they only allowed them to drink wine coolers, and M.C. said that R.K.'s parents were strict. So in order to believe the version presented by R.K. and M.C., R.K.'s parents went from being strict on Friday and letting her have a once-in-a-lifetime drinking of wine coolers to pushing them to get drunk or go home on Saturday. M.C. claimed that the weekend of this incident was the first and last time, the only time, she went to the Kepler home while Mr. Kepler lived there. And she claimed that Mr. Kepler grabbed her after she exited the bathroom around 1 or 1.30 a.m. Defense witness Mark Beck recalled being there when he attended Mr. Kepler's gathering in February, and he recalled M.C. and R.K. being present. Beck usually left around midnight. William Brown remembered being at the Kepler home on February 6th when this was alleged to have occurred. And William Brown said he was there until 1.30 or 2 a.m. Both Beck and Brown said that no minors drank alcohol and no minors ever appeared upset. R.K. confirmed that on February 6th, the Honeymans, Becks, Gulicks, and other friends of Mr. Kepler were present. So jurors had to weigh the testimony from the defense witnesses against the multiple versions given by R.K. and M.C. And jurors had to consider this inconsistent trial testimony from the juveniles regarding who was present on February 6th and what exactly happened. And the state's evidence was in no way overwhelming. Had jurors not been repeatedly flooded with these physical abuse allegations from R.K., the outcome of this trial very likely could have been different. And I just want to point out, I've got about a minute left, but in the brief, the state at no point denies that these physical abuse allegations would not have come in but for trial counsel's failures here. And the state also at no point denies Mr. Kepler's presentation that the evidence was not overwhelming in this case. Your Honors, Mr. Kepler was denied his right to a fair trial and we would respectfully request that you reverse and remand for a new trial. Okay, thank you. You'll have time in reply. Mr. Lennox, you're ready. Yes, Your Honor. Opposing counsel, Your Honors, and may it please the court. My name is Michael Lennox and I represent the state in this matter. This court should affirm the defendant's conviction of criminal sexual abuse because trial counsel did not provide ineffective assistance and the defendant has failed to engage in a full Strickland analysis. In his brief, the defendant alleges 16 reasons why trial counsel wasn't effective. In some, these reasons reference testimony elicited by R.K., C.K., and A.M. and the form in which trial counsel asked questions or objected. The Supreme Court in Strickland v. Washington provides us with the standard to apply in cases such as this, stating, When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that the counsel's representation fell below an objective standard of reasonableness in light of all the circumstances. Further stating, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance. The defendant must show that the errors had an adverse effect on the defense. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Now I read the appellant's brief and what you just stated, I see them arguing throughout the entire brief that without these errors, the outcome would have been different. I'll be honest with you. I think you've got a uphill road, in my opinion, on this case. And so you're going to really have to convince me that these errors had no bearing on the on the jury's decision in this case. Okay. Yes, Your Honor. The defendant's brief, in my opinion, at least, is wholly deficient in terms of a Strickland analysis. It never satisfies the prejudice step in the analysis and at points even fails to allege how trial counsel's conduct was objectively unreasonable. The defendant's reply states incredulously that the defendant didn't know how the state could overlook the five page section on prejudice from pages 42 to 46 of his opening brief. It is false that the defendant discussed prejudice for five pages. The defendant took page 42, a partial sentence on page 43, and a paragraph worth of rehashing all the ways he claims his trial counsel wasn't effective to explain how he was prejudiced on page 46. Honestly, with such an essential part of the Strickland analysis taking up so little space, it's understandable how the defendant could think that the state would have missed this, but the state did not. It seems the defendant's entire theory of this case rests on the idea that the jury was flooded or overwhelmed by irrelevant or overly prejudicial evidence due to some failure by trial counsel. And the state's point in some is that most, if not all, of the evidence the defendant refers to was not irrelevant, and the defendant has failed throughout the brief to show how it was prejudicial. In effect, the defendant is seeking that this court eliminate the prejudicial step of the Strickland analysis when he argues a summation of legal conclusions for about a page and a half and a 52 page brief. In reference to the first and second issues that the defendant claims trial counsel did not object to, the first one is that R.K.'s testimony that the defendant got progressively more physically and verbally mean and the defendant wouldn't take out his aggressions on R.K. And that he dragged her up the stairs after finding out she had a secret phone. And the second is that R.K.'s testimony that the defendant had hit her in the mouth repeatedly on one occasion bruising her lip and had also kicked her repeatedly while she was on the floor. Trial counsel asked for a sidebar after testimony of a secret phone and a seizure, and though he did not explicitly say the words I object, the trial court responded to the sidebar as if it was an objection stating I'm going to sustain that prior objection. During the sidebar, trial counsel made it clear he was taking issue with the testimony about the secret phone, stating twice that he was under the impression R.K. would only be testifying to three incidences. Later asking the court to tell the jury to disregard the testimony about the secret phone and the seizure. In regards to the lip incident, the defendant first claims trial counsel was ineffective for not objecting to the lip incident, then in his reply he improperly shifts the burden to the state to show how trial counsel engaged in sound trial strategy by allowing the evidence in. As previously stated, the standard is a Strickland analysis that the defendant must satisfy. The defendant has yet to analyze either step of the Strickland analysis in regards to the trial strategy of allowing this bruised lip testimony. In reference to the third, fourth, fifth, and sixth issues that defendant has, as previously stated, trial counsel agreed to allow three incidents to be testified to by R.K. Those incidents were the 2012 prior allegations of sexual touching, the June 28, 2016 bruised lip incident, and the incident at issue in this case with the victim M.C. It is important to note that in Strickland, the Supreme Court noted that a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. That is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Stating further, there are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client the same way. The defendant claims trial counsel provided ineffective assistance when he did not object to R.K.'s testimony that she told her friends about physical abuse from the defendant. C.K. and A.M.'s testimony saying R.K. told her friends about the physical abuse from the defendant, and that A.M. went into specific details about the abuse. Further, trial counsel allowing evidence of physical abuse could be trial strategy. Much to the same way the defendant now attempts to highlight inconsistencies in testimonies of the minors, trial counsel attempted to highlight inconsistencies in the testimonies, as well as the timeliness of the abuse allegations from R.K. coming from her mother and the defendant, coming after her mother and the defendant were no longer in the relationship. Let me ask you this. How is it reasonable and competent for a defense attorney to put on the stand DCFS employee Cummins, who he had never taken a deposition of or interviewed prior to trial, and ask questions that led to the answer, well, I've had contact with this defendant, essentially because he's either a second degree sex offender or on a sex offender list? Yes, Your Honor. So I believe you're Arguably competent of the defense attorney to allow that to happen at the trial. Yes, Your Honor. I believe the instance that you're talking about, he had asked him a yes or no question, and the DCFS agent went from that yes or no question to explain the process of whatever particular thing he was talking about. And in that process, he had to explain that they have to, for people who have, for people who are sex offenders, they have to call ahead of time or something of that effect. But after the fact, Your Honor, the defendant did ask for a mistrial. It wasn't as if the, I mean, after the fact, not immediately, but after the fact, the defendant did ask for a mistrial. And Your Honors, I see that my time is coming to an end. So I would ask for these reasons you affirm the defendant's conviction of criminal sexual abuse. Thank you. Thank you, Mr. Lennox. Ms. Lassie? Your Honors, trial counsel is supposed to provide an adversarial check to the state's case. And it's clear that that did not happen here. The state, in its argument, has repeatedly cited the Strickland analysis, the case law. The opening brief was clear about the prejudice. The prejudice here isn't a complex issue. We don't need a thesis on the prejudice. The prejudice is that counsel allowed jurors to repeatedly hear otherwise inadmissible evidence from R.K. about physical abuse allegations. And there was no reasonable, no reasonable trial attorney would have engaged in a strategy to allow all of this evidence coming in, especially where R.K.'s friends got on the stand and confirmed that they had either seen or had been told of the physical abuse. A reasonable trial attorney would have limited his focus to the sexual abuse allegations, which R.K. had not disclosed before to anyone other than Dustin Danner, whom she said that something had happened a time or two. And other than that, that was as far as she went with disclosing the sexual abuse allegations. However, where the physical abuse allegations were shared with friends and friends had seen those, and even where there was a picture of R.K.'s bruised lip, there was no reasonable strategy here. And the defense does not shift the burden from the opening brief to the reply brief. In both the opening brief, I believe on pages 29 and 30, and in the reply brief, we assert that if this was strategy, it was ineffective assistance, where no reasonable attorney faced with these facts would have engaged in such a strategy. And I believe this court's decision in People v. Fletcher provides great guidance on this point. In that case, counsel allowed the jury to be repeatedly flooded with allegations of the defendant's other crimes he had committed to demonstrate that before, when he committed all these other crimes, he pled guilty. That's how you know he was guilty. And here, he's taking it to trial, so he must not be guilty here since he's contesting it and going to trial. This court found that no reasonable attorney would allow jurors to be flooded with all of those other allegations of criminal conduct or bad acts. And this case is very similar to Fletcher. No reasonable attorney would do this here. And I would like to point out to the court that, again, the state fails to explain, even when pressed by this court, how this could have been reasonable trial strategy. And the state does not dispute, again, Mr. Kepler's assertions regarding the lack of the evidence against him for MC's sexual abuse claims. Not once in the briefing, and not once here at oral argument, does the state take a stand regarding the strength of its evidence presented at trial. And I think that's very telling. One more thing with respect to Cummins' testimony. The state argues that defense counsel asked a yes or no question. It's clear that no reasonable person would have expected to just answer counsel's question with, yes, I do recall. Obviously, defense counsel's question to Cummins prompted an explanation of why Cummins had prior contact with Mr. Kepler. And defense counsel let Cummins answer in full that he was a sex offender, that Mr. Kepler was a sex offender. And the state claimed that counsel asked for a mistrial following Cummins' testimony. That is not true. Counsel did not ask the jury to be instructed to disregard the testimony and did not ask for a mistrial at that point. It was at a separate point that counsel asked for a mistrial on separate grounds. And the transcripts bear that out. Your Honors. Let me stop you on that regard. In the Cummins line of questioning, there were two questions, right? The first question was if he had prior contact. And then the second question was, do you recall what it was regarding? That's true, Your Honor. The follow-up question does seem to ask for some explanation. It does. No reasonable witness would sit there and think that counsel wanted to hear, yes, I do recall. A reasonable witness would say, yes, and here's what it was about. And, Your Honors, I see I'm out of time. The errors by counsel and by the trial court deprived Mr. Kepler of a fair trial, and we respectfully request that you reverse and remand for a new trial. All right. Thank you both very much. The court will take this matter into consideration and issue its ruling in due course. You guys have a good day and be safe if you're on the roads. You too, Your Honor. Bye-bye.